**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------X
DR. GERALD FINKEL, as Chairman of
the Joint Industry Board of the Electrical
Industry,

                                      **REPORT & RECOMMENDATION**

                Plaintiff,        11-CV-0814 (ENV) (RER)

        -against-

DETORE ELECTRICAL CONSTRUCTION
CO., INC. and MATTHEW DETORE,

                Defendants.
-----------------------------------------------------X
**RAMON E. REYES, JR., U.S.M.J.:**

## TO THE HONORABLE ERIC N. VITALIANO, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

Dr. Gerald Finkel, Chairman of the Joint Industry Board of the Electrical Industry

("Plaintiff"), alleges that Detore Electrical Construction Co., Inc. (the "Company") and its

principal, Matthew Detore ("Detore") (collectively, "Defendants"), violated the Employee

Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, *et seq.*, and

the Labor Management Relations Act ("LMRA"), as amended, 29 U.S.C. § 141, *et. seq.*, by

neglecting to make obligatory contributions to various employee funds pursuant to two

successive collective bargaining agreements ("CBAs").

Following Defendants' failure to appear in or otherwise defend this action, Plaintiff

moved for default judgment on July 5, 2011. (Docket Entry 8.) Your Honor subsequently

granted Plaintiff's motion and referred the motion to me for a report and recommendation on

damages. (Docket Entry 12.)

For the following reasons, I respectfully recommend that a default judgment be entered against Defendants Detore Electrical Construction Co. and Matthew Detore, jointly and severally, in the amount of $123,062.71, and $4.70 per diem interest to run from July 6, 2011 until date of entry of final judgment, along with $11,432.50 in attorney's fees and $1,004.60 in costs. I also respectfully recommend that default judgment be entered against the Company only in an additional amount of $6,406.30 and $0.57 per diem interest from July 6, 2011 until date of entry of final judgment.

## BACKGROUND

Plaintiff is the Chairman of the Joint Industry Board of the Electrical Industry (the "Joint Board"), which is the administrator and fiduciary of numerous employee benefit plans (collectively, the "ERISA Plans").[1] (Compl. ¶¶ 4-5.) These plans are multiemployer benefit funds within the meaning of ERISA. (*Id.* ¶ 5; *see also* 29 U.S.C. § 1002(37)(A)). In addition, the Joint Board collects contributions under various non-ERISA plans (collectively, the "non-ERISA Plans")[2] and assessments owed to the union in the form of union dues and employee loan repayments ("Union Amounts"). (Compl. ¶ 7.) Together, the non-ERISA Plans and the Union

---

[1] Eight employee benefit plans comprise the ERISA Plans, including: the Pension, Hospitalization and Benefit Plan of the Electrical Industry ("PHBP"), the Dental Benefit Fund of the Electrical Industry ("DEN"), the Deferred Salary Plan of the Electrical Industry ("DSP" or "401(k) Plan"), the Educational and Cultural Trust Fund of the Electrical Industry ("E&C"), the Annuity Plan of the Electrical Industry ("ANN"), the Vacation-Holiday Unemployment Plan of the Electrical Industry ("VHUI"), the Health Reimbursement Account Plan of the Electrical Industry ("HRAP"), and the National Employees Benefit Fund ("NEBF"). (Compl. ¶¶ 5-6; Declaration of Kevin Duffy in Support of Plaintiff's Motion for Default Judgment ("Duffy Decl."), dated July 5, 2011, ¶ 6.)

[2] The non-ERISA Plans include: the Electrical Employers Self Insurance Safety Plan ("EESISP"), the Benefit and Wage Delinquency Fund ("Delinquency Fund"), the Committee on Political Education ("COPE"), and contributions to fund the Joint Board's operations ("JT Board"). (Compl. ¶ 7; Duffy Decl. ¶ 7.)

Amounts are termed the "non-ERISA Contributions." (*Id.*)  The ERISA Plans, except for DSP, combined with the non-ERISA Contributions, are collectively termed the "JIB Contributions." (*Id.*)  Finally, the JIB Contributions together with DSP are collectively referred to as the "Required Contributions."  (*Id.*)

The Company is a member of the Association of Electrical Contractors (the "AEC").  (*Id.* ¶ 12.)  The AEC, on the Company's behalf, entered into two successive CBAs with the New York Electrical Contractors Association, Inc. and Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO (the "Union") covering a six year period  between 2007 and 2013.[3]  (*Id.* ¶¶ 12-14; Duffy Decl. ¶ 2.)  Under the CBAs' terms, the Company is obligated to regularly make the Required Contributions (Compl. ¶ 15; Duffy Decl., Exh. A-B); to submit payroll reports outlining each employee's name, gross wages, and hours worked in connection with the JIB Contributions (Compl. ¶ 17); and to submit reports to Mercer Trust Company ("Mercer") explaining the amounts of Employee Contributions, Employer Contributions, and loan repayments deduced from employees' wages and then paid to Mercer. (*Id.* ¶ 18.)

On April 15, 2010, Plaintiff and Defendants entered into a Stipulation and Forbearance agreement (the "April Stipulation").  (Duffy Decl., Exh. P1.[4])  The April Stipulation established the Defendants' total delinquent contributions and interest of $53,288.49 to the Joint Board for weeks ending January 13, 2010 through March 17, 2010, and to the DSP for weeks ending February 3, 2010 through March 17, 2010.  (*Id.* ¶ 1)  As consideration for entering into the April

---

[3]  Each CBA covers a three year term, as follows: May 10, 2007 through May 13, 2010 (the "2007 CBA") and May 14, 2010 through May 13, 2013 (the "2010 CBA").  (*Id.* ¶ 14.)

[4]  The April Stipulation, located in Exhibit P, will be referred to as Exh. P1.

Stipulation, Defendants executed an Affidavit of Confession of Judgment to be entered against them if they breached the April Stipulation. (*Id.* ¶ 15; Duffy Decl. ¶ 21; Duffy Decl., Exh. Q.) Defendants subsequently defaulted on the April Stipulation, remitting only $24,920.00 of the total amount due. (Duffy Decl. ¶ 22, Exh. P1 ¶ 1, P2 ¶ 1.[5])

Plaintiff and Defendants entered into another Stipulation and Forbearance agreement on October 31, 2010 (the "October Stipulation"), which set forth the Defendants' total delinquent contributions, jointly and severally, as $56,579.15. (*Id.* at Exh. P2 ¶ 1.) This amount represents $28,368.49 in delinquent contributions under the April Stipulation, $17,643.78 in contributions owed to the Joint Board for weeks ending August 18, 2010 through September 29, 2010, $10,566.88 in contributions owed to DSP for weeks ending July 28, 2010 through August 18, 2010 and September 15, 2010 through September 29, 2010. (*Id.*) Again Defendants signed an Affidavit of Confession of Judgment. (*Id.* ¶ 15.)

Additionally, under the October Stipulation, Defendants agreed that if they defaulted and did not cure their default within five days after they received written notice of their default, the Joint Board "shall be entitled to move the Court to have judgment entered against Debtors [Defendants] in the Court for breach of this Agreement in the full amount of any unpaid contributions, plus interest, liquidated damages, attorney's fees and costs." (*Id.* ¶ 8.) Defendants defaulted under the October Stipulation, and Plaintiff informed Defendants about their default by letter dated January 5, 2011. (Duffy Decl., Exh. R.) Defendants failed to cure their default within the required five days. (Duffy Decl. ¶ 34.) Plaintiff subsequently filed this lawsuit on February 18, 2011. (Docket Entry 1.)

---

[5] The October Stipulation, *see infra*, located in Exhibit P, will be referred to as Exh. P2.

Plaintiff argues that he is entitled to the following amounts from Defendants: (1) $38,579.15 due under the October Stipulation (Duffy Decl. ¶ 35); (2) unpaid JIB Contributions for weeks ending April 13, 2011 through May 18, 2011 and June 1, 2011 through June 22, 2011, totaling $27,087.06 (*id.* ¶ 36, Exh. N); and (3) unpaid DSP contributions for weeks ending December 22, 2010 and March 2, 2011 through June 22, 2011, totaling $21,284.46 (*id.* ¶ 37, Exh. O). Plaintiff thus requests a total of $48,371.52 in Required Contributions. (*See* Declaration of Peter Herman in Support of Plaintiff's Motion for Default Judgment ("Herman Decl."), dated July 5, 2011, ¶ 12.) Plaintiff also seeks $5,187.00 in underpayment of the Required Contributions based on an August 19, 2010 audit (the "Audit Deficiency")[6] of the Company's payroll records (the "Audit Report") for weeks April 1, 2009 through March 31, 2010. (Duffy Decl. ¶¶ 38-41, Exh. T-U.) In addition, Plaintiff requests interest[7] in the amount of $5,108.50 through July 5, 2011 and $9.50 per diem from July 6, 2011 to the date of entry of final judgment on the unpaid and late-paid Required Contributions, the stipulations, and the Audit Deficiency. (Herman Decl. ¶ 29.) Finally, Plaintiff seeks $31,663.87 in liquidated damages[8] (*id.* ¶¶ 30-36), $11,804.50 in attorney's fees (*id.* ¶¶ 44-45), and $1,018.10 in costs (*id.* ¶ 46).

---

[6] Plaintiff only requests the Audit Deficiency against the Company. *See infra.*

[7] The Company and Detore owe different interest amounts. *See infra.*

[8] The Company and Detore owe different liquidated damages amounts. *See infra.*

## DISCUSSION

### I. Liability

#### A. Default Judgment

A party's default is construed as an admission of all well-pleaded factual allegations of liability outlined in the complaint, expect those related to damages. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citations omitted). Plaintiff is entitled to an entry of default by virtue of Defendants' failure to respond to Plaintiff's Complaint, to respond to Plaintiff's Motion for Entry of Default Judgment, to notice any appearance on Defendants' behalf, or to otherwise defend against this lawsuit. (Docket Entry 7.)

A court must still determine, however, whether the alleged facts establish the defaulting defendant's liability as a matter of law. *Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009) (citing *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981) (clarifying that even after a default has been entered, a district court "need not agree that the alleged facts constitute a valid cause of action")).

Plaintiff alleges that the Company violated Section 515 of ERISA, which provides that:

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement.

29. U.S.C. § 1145. A plan member's duty to make contributions under Section 515 is enforceable pursuant to Section 502, which allows a plan fiduciary to bring a civil action to enforce the plan's provisions or obtain equitable relief. *See* 29 U.S.C. §§ 1132(a)(3)(B)(ii), 1132(d)(1). The Company is an employer under ERISA, *see* 29 U.S.C. § 1002(5), so it was

obligated to make contributions to the ERISA Plans under the terms of the plans or the CBAs.

29 U.S.C. § 1145. Plaintiff alleges that the Company failed to make contributions under the

CBAs' terms (Compl ¶¶ 54-56), so Plaintiff has established that the Company is liable for

violating ERISA.

Plaintiff further explains, in relation to the DSP, that the Company violated Section 404,

which states that:

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of
> the participants and beneficiaries and for the exclusive purpose of providing
> benefits to participants and their beneficiaries . . . with the care, skill, prudence,
> and diligence under the circumstances then prevailing that a prudent man acting in
> a like capacity and familiar with such matters would use in the conduct of an
> enterprise of a like character and with like aims.

29 U.S.C. §§ 1104(a)(1)(A)(i), 1104(a)(1)(B). If a fiduciary breaches Section 404, she is

personally liable under Section 409 to restore any losses to the plan. 29 U.S.C. § 1109(a).

Plaintiff has sufficiently alleged that the Company failed to make timely contributions to the DSP

and thus commingled such funds with its general assets, which is a breach of Section 404 for

which the Company is personally liable under Section 409. (*Id.* ¶¶ 61-62.)

In addition, Plaintiff contends that the Company violated the CBAs' terms and thus he

brings this suit for beach of contract under Section 301 of the LMRA, which states that:

> [s]uits for violation of contracts between an employer and a labor organization
> representing employees in an industry affecting commerce . . . may be brought in
> any district court of the United States having jurisdiction of the parties . . . .

29 U.S.C. § 185(a). The Company is an employer and the Union is a labor organization

"representing employees in an industry affecting commerce" within the meaning of Section 301

of the LMRA. *See id.* Plaintiff alleges that the Company failed to make the Required

Contributions under the CBAs (*id.* ¶ 64); therefore, Plaintiff has established that the Company is liable under Section 301 of the LMRA. *See Brown v. C. Volante Corp.*, 194 F.3d 351, 354 (2d. Cir. 1999) (citations omitted) (explaining that a lawsuit for failure to abide by a CBA is governed by 29 U.S.C. § 185(a)).

       B.     <u>Detore's Personal Liability</u>

Significantly, Detore signed both stipulations twice, once in his capacity as principal of the Company and once in his personal capacity. (Duffy Decl., Exh. P1-P2.) "When determining whether an individual intended to be held personally liable for unpaid CBA contributions owed pursuant to ERISA obligations, the court looks to principles of state law." *Jacobson v. Citi-Wide Elec. Corp.*, No. 03-CV-263 (DLI) (SMG), 2008 WL 4491374, at *2 (E.D.N.Y. Sept. 30, 2008) (citing *Lerner v. Amalgamated Clothing & Textile Workers Union*, 938 F.2d 2, 5 (2d Cir. 1991)) (applying New York law in a similar ERISA / LMRA action involving a stipulation and the same Joint Board plaintiff as here); *see also Mason Tenders Dist. Council of Greater N.Y. v. Cheromin, Inc.*, No. 07-CV-1755 (DAB), 2009 WL 1024256, at *3 (S.D.N.Y. Apr. 13, 2009) (citing *Mason Tenders Dist. Council Welfare Fund v. Thomsen Const. Co.*, 301 F.3d 50, 53 (2d Cir. 2002)) (explaining that courts in the Second Circuit use New York law in deciding whether personal liability exists in a contract under LMRA Section 301). "Under New York law, an agent who signs an agreement on behalf of a disclosed principal will not be individually bound to the terms of the agreement 'unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal.'" *Lerner*, 938 F.2d at 5 (quoting *Mencher v. Weiss*, 306 N.Y. 1, 4 (N.Y. 1953)). "The factors to be examined in assessing the signatory's intention include the length of the contract, the location of the liability

provision(s) in relation to the signature line, the presence of the signatory's name in the agreement itself, the nature of the negotiations leading to the contract, and the signatory's role in the corporation." *Cement & Concrete Workers Dist. Council v. Lollo*, 35 F.3d 29, 35 (2d Cir. 1994) (citation omitted).[9]

In light of these factors, it is clear that Detore should be held personally liable under the stipulations. The stipulations are nearly identical, except for the amount owed under each contract. Both stipulations are only five pages. The provisions that reference Detore's personal liability are located in the stipulations' opening paragraph, which names Detore "individually" and as one of the two debtors, and in paragraph one, which refers to the debtors having joint and several liability for the delinquent contributions. (Duffy Decl., Exh. P1 ¶¶ Intro-1, Exh. P2 ¶¶ Intro-1.) These liability provisions appear only four pages before Detore's signature, so the short length of the agreement militates against the possibility that Detore did not read the liability provisions. Additionally, Detore signed both stipulations both personally and on behalf of the Company. The signature line giving rise to Detore's personal liability lists "MATTHEW DETORE," followed by Detore's signature on the line, and then followed by "Matthew DeTore, Personally." (*Id.* at Exh. P1, at 5, Exh. P2, at 5.) Moreover, as the Company's principal, Detore is a learned businessman who should understand the implications of signing a stipulation personally. Further, Detore signed two stipulations and two affidavits of confession of judgment, which show his familiarity with the documents and their obligations. Given these factors, it is clear that Detore should be held personally liable based on the stipulations. *See Citi-Wide Elec.*

---

[9] Plaintiff cites to the *Lollo* factors, which is further evidence that he intended his stipulations to be governed by LMRA Section 301. (Plaintiff's Memorandum of Law in Support of Motion for Default Judgment ("Pl. Mem."), dated July 5, 2011, at 9.)

*Corp.*, 2008 WL 4491374, at *3-*4 (finding an officer personally liable in a similar case where he signed the stipulation both personally and as a principal of the entity); *see also Salzman Sign Co. v. Beck*, 10 N.Y.2d 63, 67 (N.Y. 1961) ("[W]here individual responsibility is demanded the nearly universal practice is that the officer signs twice - one as an officer and again as an individual.").

Detore is thus jointly and severally liable with the Company for the damages incurred in this lawsuit, with the exception of the Audit Deficiency. (*See* Herman Decl. ¶ 56; Duffy Decl., Exh. P1 ¶¶ 1,3-4,6, Exh. P2 ¶¶ 1,3-4,6).

## II. <u>Damages</u>

After showing liability by virtue of Defendants' default, Plaintiff's claims for damages must be established so that the court may ensure that there is a proper basis to enter judgment in the amount demanded. *See Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). A court may make this determination by holding a hearing or relying on affidavits and other documentary evidence. *See id.*; FED. R. CIV. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991) (citations omitted).

To support his damages request, Plaintiff has submitted, among other evidence, declarations of Kevin Duffy, an administrator at the Joint Board, and Peter Herman, Plaintiff's counsel; the two CBAs; the two Stipulations; the Audit Report; relevant trust agreements for the various plans; payroll reports; DSP report summaries; and contemporaneous attorney billing records. (Docket Entries 9-10.) Such documentary evidence provides a sufficient basis upon which to determine damages; therefore, a hearing is not necessary.

Once a defendant's liability is established under Section 515 of ERISA, a plaintiff is entitled to an award of 1) unpaid contributions, 2) interest on unpaid contributions, 3) liquidated damages, 4) reasonable attorney's fees and costs, and 5) such other legal and equitable relief as the Court may deem appropriate. 29 U.S.C. § 1132(g)(2). A plaintiff who is suing for a failure to abide by a CBA can also seek damages under Section 301 of the LMRA. *See Brown*, 194 F.3d at 354 (citations omitted).

Here, Plaintiff seeks the stipulation balance, unpaid contributions, the Audit Deficiency, interest on all applicable contributions, liquidated damages, and attorney's fees and costs.

### A. Stipulation Balance

Plaintiff seeks to recover $38,579.15 as the unpaid balance under the October Stipulation. (Duffy Decl. ¶¶ 20-35.) This amount is based on the Stipulation's terms (*id.* at Exh. P) and subsequent partial payment by Defendants (*id.* at Exh. S). Upon review of the Stipulations and the Joint Board's Stipulation File Detail, I find that Plaintiff's calculations accurately reflect the amount owed under the Stipulation. Therefore, I respectfully recommend that Plaintiff be awarded $38,579.15 against Defendants, jointly and severally.

### B. Unpaid Required Contributions

Plaintiff seeks to recover $48,371.52 in unpaid Required Contributions (Herman Decl. ¶ 12), which is comprised of $27,087.06 in unpaid JIB Contributions for weeks ending April 13, 2011 through May 18, 2011 and June 1, 2011 through June 22, 2011 (Duffy Decl. ¶ 36, Exh. N) and $21,284.46 in unpaid DSP Contributions for weeks ending December 22, 2010 and March 2, 2011 through June 22, 2011 (*id.* ¶ 37, Exh. O). Although Federal Rule of Civil Procedure 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is

demanded in the pleadings," FED. R. CIV. P. 54(c), the Rule also allows a court to award

"damages that accrued during the pendency of the litigation if the complaint put defendant on

notice that plaintiff might seek such damages." *Finkel v. Triple A Group Inc.*, 708 F. Supp. 2d

277, 282-83 (E.D.N.Y. 2010) (citations omitted). *See also King v. STL Consulting, LLC*, No. 05-

CV-2719 (SJ) (KAM), 2006 WL 3335115, at *4-*5 (E.D.N.Y. Oct. 3, 2006) (citations omitted).

Since the complaint pleads that "[t]he Company remains obligated to pay the Required

Contributions to all Plans due under the 2010 CBA that will accrue between the date this

Complaint is filed and the date judgment is entered" (Compl. ¶ 38), the Company had proper

notice that it was liable for damages during time periods other than those specially alleged in the

complaint. Therefore, damages may be awarded for unpaid contributions accruing after this suit

was filed, even though they were not specifically identified in the complaint.

Having reviewed the documents and calculations submitted by Plaintiff, I find that

Plaintiff's calculations of unpaid Required Contributions accurately reflect the amount due.

Therefore, I respectfully recommend that Plaintiff be awarded $48,371.52 in unpaid Required

Contributions (consisting of $27,087.06 in unpaid JIB Contributions and $21,284.46 in unpaid

DSP Contributions) against Defendants, jointly and severally.

C.      Audit Deficiency

Plaintiff also seeks to recover $5,187.00 in damages from the Audit Deficiency, based on

the August 19, 2010 audit of the Company's payroll records. The audit showed that the

Company underpaid Required Contributions for weeks April 1, 2009 through March 31, 2010

under the 2007 CBA. (Duffy Decl. ¶¶ 38-39, Exh. T.) Plaintiff notified the Company of its

Audit Deficiency by letters dated October 21, 2010 and December 6, 2010, which contained a

schedule of the deficiency (*id.* ¶ 40, Exh. U), but the Company failed to remit the Audit

Deficiency (*id.* ¶ 41). The Audit Report and letters constitute sufficient proof upon which to base

an award of damages. Therefore, I respectfully recommend that Plaintiff be awarded $5,187.00

in the Audit Deficiency. However, the Company is solely liable for this amount because Plaintiff

has not claimed damages from the Audit Deficiency against Detore. (Herman Decl. ¶ 56.)

     D.     Interest

The Second Circuit has "interpreted ERISA as authorizing the district court to award

prejudgment interest to a successful ERISA claimant, and that decision, like the decision to

award attorney's fees, is committed to the sound discretion of the district court." *Slupinski v.*

*First Unum Life Ins. Co.*, 554 F.3d 38, 53-54 (2d Cir. 2009) (citation omitted). Although "it is

ordinarily an abuse of discretion not to include pre-judgment interest" in employment cases

awarding damages for lost wages, *id.* at 54 (citations and quotation marks omitted), "the aim is to

make the plaintiffs whole, but not to give them a windfall." *Jones v. UNUM Life Ins. Co. of*

*America*, 223 F.3d 130, 139 (2d Cir. 2000) (citation and quotation marks omitted).

ERISA requires that interest be calculated using the rate provided for under the plan, or if

none is provided, the rate prescribed under Section 6621 of Title 26, specifically, 26 U.S.C. §

6621(a)(2). 29 U.S.C. § 1132(g)(2)(B). (*Id.* ¶ 16.) Effective June 1, 2007, the Joint Board

adopted a policy of assessing interest for delinquent contributions to all plans, except the NEBF,

using the variable rate established by 26 U.S.C. § 6621. (Duffy Decl. ¶ 43, Exh. J at 11, § 6.9.3,

Exh. V-W.) The NEBF has an established interest rate for delinquent contributions of 10%

annually, compounded monthly. (*Id.*) I recommend applying the rates used by Plaintiff to

calculate interest for the unpaid contributions.

1.     Stipulation Balance

Plaintiff requests $1,890.57 in interest on the amounts due for all weeks covered by the

October Stipulation, plus $4.23 per diem interest.  (Pl. Mem., at 17; Herman Decl., Exh. D.)

However, Defendants paid some of these weeks' contributions, albeit late.[10]  Plaintiff has also

asked for interest to be paid for these weeks as late-paid contributions prior to the

commencement of this action, *see infra*.  (Pl. Mem., at 16.)  To award interest for late-paid

contributions under the October Stipulation *and* under the late-paid interest category as well

would result in double recovery, and thus a windfall for Plaintiff.  The Court will therefore

exercise its discretion and only award interest under the Stipulation for those weeks that remain

unpaid.[11]   Interest on the stipulation amounts that were paid late will be addressed under

"Interest on Pre-Complaint, Late-Paid Required Contributions," *see infra*.

Consequently, under the stipulations, Plaintiff is only due interest for the DSP

Contributions for weeks ending July 28, 2010 through August 18, 2010 and September 15, 2010

through September 29, 2010.  However, Plaintiff has not submitted evidence of the DSP

Contributions for the relevant weeks, only for other time periods.  (*See id.* at Exh. O.)

Additionally, Plaintiff's attorney's calculations for interest on the stipulations are not evidence

and also are not helpful in ascertaining the interest amount since his charts do not divide the total

contribution amounts between the JIB Contributions and the DSP Contributions.  (Herman Decl.,

[10]  The weeks at issue are: for JIB Contributions, those weeks ending January 13, 2010 through
March 17, 2010 and August 18, 2010 through September 29, 2010; and for DSP Contributions,
those weeks ending February 3, 2010 through March 17, 2010.

[11]  The stipulations both explain "that interest has accrued and will continue to accrue on all
outstanding balances set forth above *until paid* at a rate established by and prevailing under the
Plans."  (Duffy Decl., Exh. P1 ¶ 4, Exh. P2 ¶ 4 (emphasis added).)  Thus, interest shall only
accrue on the stipulations' amounts until the amounts are paid.

Exh. D.)  Therefore, I respectfully recommend that Plaintiff not be awarded interest under the stipulations because he has not submitted adequate evidence to support his request.

## 2.    Required Contributions

ERISA entitles Plaintiff to interest on all ERISA Contributions that were unpaid at the time the complaint was filed, as well as those that accrued while the lawsuit was pending.  *See* 29 U.S.C. § 1132(g)(2)(B); *Triple A Group, Inc.*, 708 F. Supp. 2d at 286-87 (citations omitted). Plaintiff is also entitled to interest on unpaid non-ERISA Contributions under the CBAs' terms. *Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d. 156, 162 (E.D.N.Y. 2008) (citations omitted).  In this Circuit, an award of prejudgment interest under the LMRA may be determined at the Court's discretion.  *Id.* (citations omitted).  The CBAs empower the Joint Board to establish and amend the rules and regulations under which it will operate.  (Duffy Decl., Exh. A at 7, Exh. B at 7.)

### a.    Unpaid Required Contributions

The interest owed on the unpaid Required Contributions, which consist of the unpaid JIB Contributions and the unpaid DSP Contributions, *see supra*, is $258.65 as of July 5, 2011.  This amount was calculated based on the previously described interest rates and the interest period. Interest will also accrue at a rate of $4.70 per diem on these unpaid Required Contributions from July 6, 2011 through entry of final judgment.  I respectfully recommend that Plaintiff be awarded these amounts, against the Defendants jointly and severally.

b.     <u>Interest on Pre-Complaint, Late-Paid Required Contributions</u>

ERISA itself does not permit the recovery of interest on late-paid ERISA contributions. It is, however, within the Court's discretion to award such interest under the LMRA through the CBA. *Finkel v. INS Elec. Servs. Inc.*, No. 06-CV-4862 (SLT) (MDG), 2008 WL 941482, at *5, *7 (E.D.N.Y. Apr. 4, 2008) (citations omitted) ("Although plaintiff has no right under ERISA to seek damages for those delinquent contributions that were paid prior to the suit being filed . . . , the LMRA provides a statutory basis for recovering damages for those untimely contributions in violation of the CBA."). "Similarly, liability for delinquent contributions to the Non-ERISA Plans is found under the LMRA rather than ERISA." *Id.* at *5 (citation omitted). *See also LaBarbera v. T & M Specialties Ltd.*, No. 06-CV-5022 (CPS) (SMG), 2007 WL 2874819, at *2 (E.D.N.Y. Sept. 27, 2007) ("The CBA . . . , however, provide[s] a contractual basis for the assessment of interest . . . in the event of untimely contribution payments."); *Lodges 743 & 1746, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Aircraft Corp.*, 534 F.2d 422, 445-47 (2d Cir.1975) (It is within a district court's discretion to award interest in an LMRA Section 301 case).

Here, Plaintiff has sufficiently alleged a cause of action for breach of the CBAs under Section 301 of the LMRA "for failure to remit the Required Contributions in accordance with the CBAs." (Compl. ¶ 64.) Thus, Plaintiff is entitled to interest under the CBAs on the late-paid contributions, to be computed as interested was calculated on the unpaid Required Contributions, *see supra*.

Plaintiff requests interest for late-paid JIB Contributions for weeks ending October 28, 2009 through November 25, 2009, December 9, 2009 through March 17, 2010, March 31, 2010,

May 5, 2010 through May 12, 2010, May 26, 2010 through September 29, 2010, October 27, 2010 through November 24, 2010, and December 8, 2010 through December 15, 2010. (Duffy Decl. ¶ 44, Exh. X.) Having computed the interest, I respectfully recommend that Plaintiff be awarded $1,812.80 in interest on JIB Contributions paid late prior to the commencement of this action, jointly and severally against the Company and Detore.[12]

Plaintiff requests interest for late-paid DSP Contributions for weeks ending January 13, 2010 through March 31, 2010, August 25, 2010 through September 8, 2010, and October 6, 2010 through November 10, 2010. (Duffy Decl. ¶ 46, Exh. Y.) Plaintiff's exhibit, however, lists additional weeks for which he does not request interest in his declaration or memorandum of law. (*See id.*; Pl. Mem., at 16.) Therefore, I respectfully recommend that Plaintiff only receive interest for these named weeks, which totals $411.68.

### c.     Interest on Post-Action, Late-Paid Required Contributions

It is well-settled that an employer cannot avoid paying interest by paying off ERISA Contributions *after* an action has commenced. *Iron Workers Dist. Council of W. N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1506-07 (2d Cir. 1995) (finding that employers cannot avoid interest by remitting payment of unpaid

---

[12] Plaintiff calculated interest here under the 26 U.S.C. § 6621(a)(2) rate for all plans, which is a lower interest rate than Plaintiff would receive if the NEBF rate was employed for that particular plan. (*Id.* at Exh. X.) Therefore, Plaintiff's calculations will be accepted because his calculations result in a lower recovery amount than the amount to which he is entitled under the CBAs. Moreover, Plaintiff used the 26 U.S.C. § 6621(a)(2) interest rate as it existed on the date when the late payment was made. (*Id.*; Herman Decl., Exh. B.) Although Plaintiff previously used the rate when payment was due, *see supra* - unpaid DSP Contributions (Herman Decl., Exh. A), Plaintiff's use here of the interest rate on the date when the late payment was made results in a lower recovery for Plaintiff, so Plaintiff will receive the lower interest rate that he requests. Additionally, Plaintiff does not describe what the column "additional interest" means on his interest calculation chart. (*See id.*) Accordingly, I recommend that Plaintiff not be awarded this additional $36.49 in interest.

ERISA contributions before judgment is entered). In addition, the CBAs provide a contractual basis for the assessment of interest on delinquent non-ERISA Contributions. *See, e.g.*, *Finkel v. Rico Elec., Inc.*, No. 07-CV-2145 (ARR) (SMG), 2009 WL 3367057, at * 3 (E.D.N.Y. Oct. 16, 2009) (citations omitted); *INS Elec. Servs., Inc.*, 2008 WL 941482, at *5, *7 (citations omitted). Accordingly, Plaintiff is entitled to interest on all overdue ERISA and non-ERISA Contributions that were paid late after this action was commenced. Plaintiff requests interest on late-paid JIB Contributions[13] for weeks ending December 22, 2010 through April 6, 2011 and May 25, 2011, and on late-paid DSP Contributions for weeks ending December 1, 2010 through December 15, 2010 and December 29, 2010 through February 23, 2011. (*Id.* ¶¶ 45, 47, Exh. N-O.)

I have adjusted Plaintiff's calculations for several errors. (*See id.*; Herman Decl. ¶ 22, Exh. C.) First, Plaintiff over-calculated the interest due on the DEN account and under-calculated the interest due on the ANN account. Additionally, for the JIB Contributions, Plaintiff misdated the contributions for the week ending January 26, 2011 as ending February 2, 2011; thus, Plaintiff slightly under-calculated the interest he is due for that week. The net result of Plaintiff's miscalculations is that Plaintiff is owed less interest than he requests. Accordingly, I respectfully recommend that Plaintiff be awarded $371.64 in interest for late-paid contributions after the commencement of this action, jointly and severally against the Company and Detore.

### 3. Interest on the Audit Deficiency

Plaintiff is owed $5,187.00 in damages from the Audit Deficiency. (Duffy Decl. ¶¶ 38-41, Exh. T-U.) The interest due under the audit for the time period in question, pursuant to 26 U.S.C. § 6621, is 4%. (*See* Herman Decl., Exh. B, E.) Thus, I respectfully recommend that

---

[13] The date payment was received for overdue JIB Contributions is marked with a dotted date stamp on each invoice. (Duffy Decl. ¶ 15.)

Plaintiff be awarded $181.90 in interest on the Audit Deficiency through July 5, 2011, and $0.57 per diem from July 6, 2011 through date of entry of final judgment, against the Company only.

E.     Liquidated Damages

Plaintiff seeks liquidated damages for all unpaid and late-paid[14] Required Contributions, including those discovered in the Audit Deficiency and the October Stipulation.  (*Id.* at 17-18.) ERISA provides for an award of such damages equal to the greater of: (1) the interest on the unpaid contributions, or (2) the amount of liquidated damages provided for under the plan not exceeding twenty percent of the unpaid contributions.  29 U.S.C. § 1132(g)(2)(C).   The CBAs provide for liquidated damages in an amount equal to 20% of the delinquent contributions for each plan.  (Duffy Decl., Exh. A at 18, Art. II § 12(a), Exh. B at 19, Art. II § 12(a).)  *See Bricklayers Ins. & Welfare Fund v. Precise Brick, Inc.*, No. 08-CV-4362 (CBA) (CLP), 2009 WL 4891821, at *6 (E.D.N.Y. Dec. 17, 2009) (allowing for an award of liquidated damages for both ERISA and non-ERISA plans where the plans' CBA provides for liquidated damages). Therefore, the 20% rate pursuant to the CBAs and ERISA will be utilized in assessing liquidated damages.

Plaintiff is entitled to the following liquidated damages: 1) $9,674.30 on unpaid Required Contributions, 2) $11,145.87 on Required Contributions paid late after this lawsuit was commenced, and 3) $1,037.40 on the Audit Deficiency.  Plaintiff is not entitled, however, to liquidated damages on the Stipulation balance for the same reasons why he is not entitled to

---

[14]  Plaintiff specifically asks for liquidated damages on "delinquent contributions paid late *after* this lawsuit."  (Pl. Mem., at 17 (emphasis added) (citing *Iron Workers*, 68 F.3d at 1507-08).) Thus, Plaintiff's liquidated damages will be assessed accordingly.

interest on that balance, *see supra*. Therefore, I respectfully recommend that Plaintiff be awarded $21,857.57 in liquidated damages.[15]

     F.     <u>Attorney's Fees and Costs</u>

Finally, Plaintiff seeks $11,804.50 in attorney's fees (Herman Decl. ¶¶ 44-45) and $1,018.10 in costs (*id.* ¶ 46). Under Section 502 of ERISA, an award of reasonable attorney's fees and costs is mandatory in an action where the plaintiff recovers delinquent contributions. 29 U.S.C. § 1132(g)(2)(D); *see also Labarbera v. Clestra Hauserman, Inc.*, 369 F.3d 224, 226 (2d Cir. 2004) (quoting 29 U.S.C. § 1132(g)(2)(D)). The party seeking attorney's fees must, however, produce contemporaneous time records showing the dates worked, hours expended, and nature of work performed by each attorney. *N.Y.S. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983) (citations omitted).

The Second Circuit uses the "presumptively reasonable fee" approach to determine whether attorney's fees are reasonable, which is equal to a reasonable hourly rate multiplied by a reasonable number of hours expended. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008); *see Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The presumptively reasonable fee "is the rate a paying client would be willing to pay," bearing in mind "that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190; *see also Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (citation omitted). District courts have broad discretion in determining the reasonable rate but should "bear in mind *all* of

---

[15] This amount consists of figures that are higher than the amounts Plaintiff requested for certain groups of liquidated damages; however, the overall figure is less than the amount of liquidated damages that Plaintiff requested in total. Therefore, I recommend that Plaintiff receive this amount of liquidated damages

the case-specific variables that . . . have [been] identified as relevant to the reasonableness of attorneys' fees," including, "the attorney's customary hourly rate" and "the experience, reputation, and ability of the attorneys." *Arbor Hill*, 522 F.3d at 186 n.3, 190 (emphasis in original) (citation omitted). In addition, courts "should generally use 'the hourly rates employed in the district in which the reviewing court sits' in calculating the presumptively reasonable fee." *Simmons,* 575 F.3d at 174 (citations omitted).

In examining the hours billed, a court should determine the reasonableness by analyzing "the value of the work product of the specific expenditures to the client's case." *Tr. of the Rd. Carriers Local 707 Welfare Fund v. Goldberg*, No. 08-CV-0884 (RRM) (MDG), 2009 WL 3497493, at *9 (E.D.N.Y. Oct. 28, 2009) (citations omitted). "[E]xcessive, redundant or otherwise unnecessary hours" should be excluded from a court's award. *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (citation omitted); *see Hensley*, 461 U.S. at 434 (citation omitted).

Plaintiff's request for attorney's fees is supported by his counsel's declaration and contemporaneous time records identifying the dates, rates, hours spent, and work performed by Cohen, Weiss and Simon LLP. (*Id.* ¶¶ 37-45, Exh. F.) In his affidavit, Plaintiff's attorney states that his law firm spent a total of 89.7 hours (23.5 attorney hours, 66.2 paralegal hours) litigating this case. (*Id.* ¶ 44.) The time was mostly spent reviewing documents, conducting research, calculating damages, and drafting and filing the complaint and other documents supporting the default judgment. (*Id.* ¶ 41.) The amount of hours billed in this case is vastly disproportionate to the amount requested in a typical ERISA case. *See, e.g., Del Turco v. Carrara Contractors, Inc.*, No. 03-CV-5538 (NG) (KAM), 2006 WL 1783632, at *1,*3 (E.D.N.Y. June 23, 2006) (awarding

25.05 attorney hours and 2.6 legal assistant hours in an ERISA default); *LaBarbera v. David Liepper & Sons, Inc.*, No. 06-CV-1371 (DLI) (JMA), 2006 WL 2423420, at *1,*5 (E.D.N.Y. July 6, 2006)[16] (awarding 17.17 hours of attorney and paralegal work in an ERISA default). However, given the complexity of the damage calculations, the various plans at issue, and the length of this litigation,[17] such use of time was not excessive, redundant, or otherwise inappropriate.

For their work on this case, Plaintiff's law firm[18] charged for work prior to January 1, 2011, $250 per hour for the work of partners Peter Herman and James R. Grisi, totaling 13 hours; $235 per hour for the work of senior associate David R. Hock, totaling 0.9 hours; $225 per hour for the work of associate Michael S. Adler, totaling 0.3 hours; and $80 per hour for the work of paralegals Kaitlin C. Love, Rodion C. Tadenev, and Maureen A. Slack, totaling 29 hours. (*Id.* ¶¶ 38-39, 44.) Beginning on January 1, 2011, the charged rates increased to: $275 per hour for the work of partners; $260 per hour for the work of senior associates; $250 per hour for the work of associates; and $90 per hour for the work of paralegals. At these new rates, the following charges were billed: 9.3 partner hours and 37.2 paralegal hours. (*Id.*)

---

[16] This Report and Recommendation was adopted in an unpublished opinion that can be found on the civil docket sheet for the case. (*See* 06-CV-1371, Docket Entry 12.)

[17] Plaintiff originally filed suit against Defendants on Dec. 31, 2009. *See Finkel v. Detore Elec. Constr. Co. Inc.*, No. 09-CV-5732 (KAM) (RLM) (E.D.N.Y. 2009). The 2009 lawsuit was voluntarily dismissed after the October Stipulation was signed (*See* 09-CV-5732, Docket Entries 12-13.) However, after Defendants defaulted on the October Stipulation, Plaintiff filed this suit on February 18, 2011. (11-CV-0814, Docket Entry 1.)

[18] All attorneys who worked on this case have experience in employee benefits practice. Their experience ranges from: more than thirty years for one partner, more than twenty years for another partner, more than ten years for the senior associate, and about eight years for the associate. (Herman Decl. ¶ 43.)

Plaintiff's counsel's contemporaneous time records, however, do not support the attorney and paralegal hours billed that are listed in Herman's declaration. According to the firm's contemporaneous billing records (*id.* at Exh. F), the following hours were worked and will be used in determining attorney's fees:[19]

| Attorney / Paralegal | Hours at Rate |
|---|---|
| James R. Grisi | 13.0 hours at $250/hr; 1.7 hours at $275/hr |
| Peter Herman | 7.6 hours at $275/hr |
| Michael S. Adler | 0.3 hours at $225/hr; 0.2 hours at $250/hr |
| David R. Hock | 0.9 hours at $235/hr |
| Rodion C. Tadenev | 5.3 hours at $80/hr |
| Maureen A. Slack | 26.8 hours at $90/hr |
| Kaitlin C. Love | 23.7 hours at $80/hr; 10.4 hours at $90/hr |

After reviewing the rates approved in comparable cases, I find that the rates charged for Plaintiff's attorneys, both before and after January 1, 2011, are reasonable for partners, senior associates, and associates. *See N.Y.S. Ass'n for Retarded Children, Inc.*, 711 F.2d at 1152-53 (Historic rates, or "figures pertinent to the time when the services were provided[,] . . . should be used . . . in setting fee awards in multi-year cases."). *See, e.g.*, *Tr. of the Local 807 Labor Mgmt. Health Fund v. Express Haulage Co.*, No. 07-CV-4211 (NG) (CLP), 2008 WL 4693533, at *10 (E.D.N.Y. Oct 23, 2008) (citations omitted) (finding a rate of $270 per hour reasonable for an attorney with seven years of experience); *La Barbera v. Cyn-Ken Driver Serv. Co. Inc.*, No. 06-

---

[19] Plaintiff's firm over-calculated Slack's and Love's hours and under-calculated Adler's hours. The net result is that Plaintiff's counsel will be awarded less attorney's fees than he requested, so the actual amounts for which the firm billed will be utilized. It should also be noted that the summary for Slack's and Love's paralegal hours printed on July 5, 2011 does not match the actual amounts billed for that time period, so the contemporaneous time billed will be used in calculating the fees owed to Plaintiff's counsel. (*See id.*)

CV-4445 (CPS) (CLP), 2007 WL 2908072, at *1,*9-*10 (E.D.N.Y. Oct. 5, 2007) (citations omitted) (approving a rate of $250 per hour for an attorney with seven years of experience, $300 per hour for an attorney with nine to ten years of experience, and $340 per hour for an attorney with seventeen years of experience, in an ERISA default judgment action).

However, Plaintiff's $90 per hour paralegal billing rate, claimed for work done on or after January 1, 2011, is slightly higher than the typical rate in other ERISA default actions. *See, e.g.*, *Tr. of the Plumbers Local Union No. 1 Welfare Fund v. William J. Kennedy Plumbing, Inc.*, No. 08-CV-3939 (CBA) (SMG), 2010 WL 1265197, at *4 (E.D.N.Y. Feb. 18, 2010) (citations omitted), *adopted by*, 2010 WL 1269770 (E.D.N.Y. Apr. 2, 2010) (reducing hourly rate for paralegal services from $90 to $80); *Finkel v. Jones Lang LaSalle Americas, Inc.*, No. 08-CV-2333 (RRM) (RML), 2009 WL 5172869, at *5 (E.D.N.Y. Dec. 30, 2009) (citations omitted) (finding $80 per hour for paralegals reasonable); *Rico Elec., Inc.*, 2009 WL 3367057, at * 7 (awarding $75 to $80 for paralegals). Since Plaintiff provides no basis for the elevated $90 per hour rate, I respectfully recommend reducing the hourly rate to $80 per hour for all paralegal hours.

Accordingly, I respectfully recommend that Plaintiff be awarded $11,432.50 in attorney's fees, consisting of $6,136.50 in fees for attorney work and $5,296.00 in fees for paralegal work.

Plaintiff also seeks $1,018.10 in costs, which includes court filing fees, service of process fees, postage, photocopy costs, phone and fax transmission costs, computer research, and attorney travel expenses. (*Id.* ¶¶ 46-51, Exh. F.) An award of reasonable costs is mandatory in a successful action to recover delinquent contributions, and courts generally award "[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients." *Goldberg*, 2009 WL

3497493, at *10 (citation omitted); *see also* 29 U.S.C. § 1132(g)(2)(D). Courts in this district

have found that costs for filing, service, postage, and photocopying are reasonable and

reimbursable. *See, e.g.*, *Rico Elec., Inc.*, 2009 WL 3367057, at *8 (citation omitted). However,

travel expenses are not reimbursable unless they were "incidental and necessary to the

representation" of the client. *SEC v. Goren*, 272 F. Supp. 2d 202, 214 (E.D.N.Y. 2003) (citation

omitted). Plaintiff does not provide an explanation as to how these attorney travel expenses were

incidental and necessary. Accordingly, I recommend that the travel expenses of $13.50 be

excluded from this award. *See Morin v. Nu-Way Plastering Inc.*, No. 03-CV-405 (ARL), 2005

WL 3470371, at *4 (E.D.N.Y. Dec. 19, 2005) (citation omitted) (finding that transportation costs

are "not incidental to the representation and thus not reimbursable"). Thus, I respectfully

recommend that Plaintiff be awarded $1,004.60 in costs.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that default judgment be entered

against the Company and Detore, jointly and severally, in the amount of $123,062.71 and $4.70

per diem interest to run from July 6, 2011 until date of entry of final judgment, broken down as

follows:

1) $38,579.15 under the Stipulation Balance
2) $48,371.52 in Unpaid Required Contributions
3) $2,854.77 in interest
4) $20,820.17 in liquidated damages
5) $11,432.50 in attorney's fees
6) $1,004.60 in costs

I also respectfully recommend that default judgment be entered on the Audit Deficiency

against the Company only in an additional amount of $6,406.30 and $0.57 per diem interest from

July 6, 2011 until date of entry of final judgment.[20]

Any objections to this Report and Recommendation must be filed with the Clerk of the Court and the Honorable Eric N. Vitaliano within fourteen days of receipt hereof. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72; *Small v. Sec'y of Health & Human Servs*., 892 F.2d 15, 16 (2d Cir. 1989).

Dated: March 6, 2012
      Brooklyn, New York

*Ramon E. Reyes Jr.*

**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**

---

[20] This amount is comprised of $5,187.00 in unpaid contributions, $1,037.40 in liquidated damages, and $181.90 in interest.